**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-4197

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

KIRSTEN VAN STEENBERG BALL,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Leonie M. Brinkema, District Judge.  (1:23-cr-00080-LMB-1)

Argued: March 20, 2026                                   Decided:  July 14, 2026

Before RICHARDSON, QUATTLEBAUM, and BERNER, Circuit Judges.

Affirmed by published opinion.  Judge Richardson wrote the opinion, in which Judges Quattlebaum and Berner joined.

**ARGUED:**  Eugene Joseph Rossi, CARLTON FIELDS, P.A., Washington, D.C., for Appellant.  Katherine Elise Rumbaugh, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:**  Jillian A. Blumenthal, CARLTON FIELDS, P.A., Miami, Florida, for Appellant.  Jessica D. Aber, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

RICHARDSON, Circuit Judge:

Kirsten Ball, a physician, challenges her convictions for the unauthorized distribution of oxycodone. All agree that her practice was to prescribe large quantities of oxycodone. The appeal turns on a one-word deletion in the jury instructions that she claims allowed conviction without the requisite proof that she knew her prescriptions were unauthorized. She argues that the instructions should have asked whether she knowingly departed from the course of *her* professional practice, not merely the course of professional practice. But she is wrong. The law requires both that the prescriptions fell outside the objective bounds of professional practice and that she knew it. Read as a whole, the charge explained just that. We therefore affirm.

## I.    BACKGROUND

From 2005 to 2022, Ball practiced medicine from her home office as a licensed physician. In April 2023, she was indicted on one count of conspiracy to distribute oxycodone under 21 U.S.C. § 846, and on twenty counts of distribution of oxycodone under § 841(a)(1). After a five-day trial, a jury convicted her of conspiracy and all but one count of distribution.

Ball does not dispute that the Government presented sufficient evidence showing that her prescriptions deviated from standard medical practice. Opening Br. 39. Her appeal instead turns on whether the jury instructions accurately stated the law—specifically, the *mens rea* required for conviction—following the Supreme Court's decision in *Ruan v. United States*, 597 U.S. 450 (2022).

2

The parties' joint proposed instructions defined the substantive offenses as requiring proof that Ball knew she was acting outside the "course of her professional practice." J.A. 146, 151, 155–56. The district court noted that although the proposed instructions quoted the regulatory language interpreting the statute,[1] the use of a possessive pronoun could "get the jury hung up on this issue of idiosyncratic practice." J.A. 1099. So the district court removed the word "her" in four instances. It retained instructions that negligence was insufficient for a criminal conviction, and that "good faith is a complete defense to each charge."[2] J.A. 1660. Ball's counsel objected to the refusal to give the proposed instructions and argued that the revised instructions were inconsistent with *Ruan*.

On direct appeal, Ball contends that the jury instructions incorrectly allowed conviction "if her medical judgments were contrary to 'the' usual practice of medicine in this country." Opening Br. 32–33. She argues the proper inquiry post-*Ruan* was whether she held the "subjective belief that within her medical practice, she was issuing a prescription within the bounds for a legitimate medical purpose." Opening Br. 29 (cleaned up). That is, so long as she was acting in the usual course of *her own* professional medical practice—one that doled out generous quantities of opioids—she could not be found guilty. We disagree.

---

[1] "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a).

[2] "Good faith means subjective good intentions and the honest exercise of professional judgment as to the patient's particular medical needs. It means that the defendant acted in accordance with what she subjectively believed to be proper medical practice." J.A. 1660–61.

3

## II.    DISCUSSION

We review *de novo* whether the challenged jury instructions correctly stated the law. *United States v. Smithers*, 92 F.4th 237, 245 (4th Cir. 2024).

The Controlled Substances Act makes it a crime to "knowingly or intentionally" prescribe a controlled substance such as oxycodone "[e]xcept as authorized."  21 U.S.C. § 841(a)(1); *see also id.* § 802(10).  By regulation, a prescription is authorized only when issued "for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  21 C.F.R. § 1306.04(a).

In *Ruan*, the Supreme Court held that the statute's "knowingly or intentionally" *mens rea* extended to the statute's "except as authorized" clause.  597 U.S. at 457. Culpability cannot turn on whether the "hypothetical 'reasonable' doctor" would have known that the conduct was unauthorized.  *Id.* at 465.  So careless overprescribing and other failures to make an "objectively reasonable good-faith effort" to prescribe in an authorized manner are insufficient to convict.  *Id.*  Instead, the Government must prove that the defendant "*subjectively believed* his conduct was outside the bounds of professional practice" or *intended* to prescribe beyond what the profession allows.  *United States v. Naum*, 134 F.4th 234, 239 (4th Cir. 2025) (emphasis added).

But *Ruan* did not make the authorization inquiry wholly subjective.  Whether a prescription was issued for a legitimate medical purpose in the usual course of professional practice is an objective question governed by professional standards.  *See* 597 U.S. at 467 ("[T]he regulation defining the scope of a doctor's prescribing authority does so by reference to objective criteria such as 'legitimate medical purpose' and 'usual course' of

4

'professional practice.'" (quoting § 1306.04(a)); *Smithers*, 92 F.4th at 246 ("[A]cting outside the 'bounds of medical practice' is a purely objective standard."); *Naum*, 134 F.4th at 243. What *Ruan* made subjective is the physician's *mens rea*: The Government must prove that the physician knew the prescription fell outside those objective bounds of medical practice or that he intended that result.[3] Ball's contrary reading collapses those distinct inquiries by allowing each physician's personal habits to define the scope of federal prescribing authority.

Ball seeks support for her preferred instructions in the regulation's use of the possessive pronoun. She argues that the pronoun requires the defendant's subjective knowledge to be measured against the "usual course of *that specific* doctor's professional practice." Opening Br. 24 (emphasis in original). But the pronoun drops out later in the same subsection. There, the regulation clarifies that "[a]n order purporting to be a prescription issued not in the *usual course of professional treatment* . . . is not a prescription within the meaning and intent of" the statute, 21 C.F.R. § 1306.04(a) (emphasis added). Same boundary, no possessive. Had "his professional practice" meant the doctor's own idiosyncratic practice, the regulation would not have stripped the

---

[3] Even so, objective standards bear on the subjective inquiry. A doctor who professes "idiosyncratic views" about the scope of his prescribing authority will only "escape liability" if the jury believes that he actually held those views. *Ruan*, 597 U.S. at 466. And "the more unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely the jury will find that the Government has carried its burden of proving knowledge." *Id.* at 467 (cleaned up) (citing *Cheek v. United States*, 498 U.S. 192, 203–04 (1991)). A jury may accept that a doctor held some objectively unreasonable notions about prescribing, but is unlikely to accept that a doctor truly believed he could dispense drugs like candy on a street corner.

possessive when marking that line.  The Supreme Court likewise treats the phrases with and without the possessive pronoun as interchangeable.  *See United States v. Moore*, 423 U.S. 122, 141 (1975); *Ruan*, 597 U.S. at 478–79 (Alito, J., concurring).  Parallel provisions in the statutory and regulatory text confirm that the possessive refers to the antecedent *profession*, not to any particular individual.  The regulation specifies that the objective standards must accord with those of an "individual practitioner," rather than, for example, the particular pharmacist or institutional practitioner.  *Compare* 21 C.F.R. § 1306.04, *with* § 1306.06 ("A prescription for a controlled substance may only be filled by a *pharmacist*, acting in the usual course of his professional practice . . . ." (emphasis added)), *and* 21 U.S.C. § 802(21) (defining "practitioner" to include various scientific and medical professionals who may handle "a controlled substance in the course of professional practice or research").  Thus, "grammatically speaking, her practice does not mean *her* idiosyncratic practice.  *Her* practice is the medical field she's in."  J.A. 2201 (emphasis added).  This humble pronoun cannot save Ball.

The instructions tracked the correct standard.  They told the jury to convict if "the defendant knowingly or intentionally distributed the substance not for a legitimate purpose or outside the usual course of professional medical practice."  J.A. 1654.  That instruction was not a model of clarity.  Read alone, its placement of "knowingly or intentionally" could leave the jury uncertain whether those terms modified only the act of distribution or also the prescription's lack of authorization.  *See Smithers*, 92 F.4th at 246–48; *Naum*, 134 F.4th at 239.

6

But we do not read instructions one sentence at a time. *United States v. Sanders*, 146 F.4th 372, 377–78 (4th Cir. 2025). Rather, we ask whether the charge as a whole, read in the context of the entire record, accurately and fairly states the controlling law. *Id.*; *Smithers*, 92 F.4th at 248. Here, the overall charge resolved any ambiguity, providing what the instructions in *Smithers* and *Naum* did not. The court told the jury that the Government had to prove that, when Ball issued the prescriptions, "she knew she was acting, or she intended to act," without authorization. J.A. 1655–56. It charged that "good faith is a complete defense," and—unlike the objective good-faith instruction we faulted in *Smithers*, 92 F.4th at 249–50—it defined good faith as "subjective good intentions" measured by "what she subjectively believed to be proper medical practice." J.A. 1660–61. It distinguished civil medical negligence from criminal conduct, explaining that the latter demanded "proof beyond a reasonable doubt that the doctor knowingly or intentionally acted outside the bounds of professional medical practice." J.A. 1659. And it forbade the jury from inferring knowledge "from proof of a mistake, negligence, carelessness or a belief in an inaccurate proposition." J.A. 1662. Taken together, those instructions required the subjective finding that *Ruan* demands.

That repeated subjective language is what the jury instructions in *Smithers* and *Naum* lacked. In *Smithers*, the offense instruction permitted conviction on an objective finding that the physician acted beyond the bounds of medical practice, and nothing in the rest of the charge required more; the good-faith instruction compounded the error by defining good faith as compliance with generally accepted standards. 92 F.4th at 246–50. Similarly, in *Naum*, the instructions required the jury to find only that the defendant

7

"knowingly and intentionally" wrote prescriptions, but not that he knew such conduct fell outside the objective bounds of professional medical practice. 134 F.4th at 239–40. Here, by contrast, the court expressly directed the jury to decide what Ball knew and intended, defined good faith by what she subjectively believed, and prohibited conviction for mere negligence or mistake.[4] The charge therefore did not leave the jury free to convict merely because a reasonable physician would have recognized the prescriptions as unauthorized.

Read in their entirety, the instructions captured *Ruan*'s framework: Professional standards objectively define the scope of authorization, but the Government still must prove that the defendant subjectively appreciated that her prescriptions fell outside those bounds.[5]

\* \* \*

Professional standards determine whether a prescription is unauthorized. And a defendant's knowledge or intent determines whether an unauthorized prescription is criminal. Because the charge required the jury to find both, Ball's conviction is

*AFFIRMED*.

---

[4] Other circuits have upheld charges containing comparable subjective-knowledge requirements. *See United States v. Hofschulz*, 105 F.4th 923, 929 (7th Cir. 2024); *United States v. Lamartiniere*, 100 F.4th 625, 636–37, 649 (5th Cir. 2024).

[5] Ball separately contends the district court abused its discretion in declining to give the parties' jointly proposed instructions. Reversal on that ground requires a proposed instruction that was (1) correct, (2) not substantially covered by the charge as given, and (3) directed at a point so important that its omission seriously impaired the defense. *United States v. Sonmez*, 777 F.3d 684, 688 (4th Cir. 2015). Ball's challenge fails for the reasons already given: The instructions as given substantially covered the subjective-knowledge requirement, and the only "point" that Ball says she was barred from pressing—that the jury had to find she knew her prescriptions were unauthorized measured against *her own* practice—is not the law.